This is a suit to set aside a compromise judgment of a compensation claim and to recover compensation for four hundred weeks, plus a penalty of fifty per cent in a lump sum, less credits for amounts already paid. Defendants filed a plea of estoppel, an alternative plea of unconstitutionality, exceptions of no cause of action and no right of action and a plea of res judicata. In answer defendants denied the allegations of plaintiff's petition, denied owing any compensation to plaintiff and alleged that the proceeding in the matter of compromise was a bar to plaintiff's right to recover.
The lower Court, in a written opinion, sustained defendants' contentions and held the judgment rendered in the joint proceeding for a compromise was legal and a bar to plaintiff's right to recover in this suit. Plaintiff is prosecuting this appeal.
We find it unnecessary to pass upon the various pleas and exceptions filed by defendants for the reason we have concluded that if the compromise judgment were annulled and set aside, plaintiff would not be entitled to any further compensation payments.
Plaintiff had been in the employ of the Trio Building Company for several years. He did not work regularly. During the farming period of the year he was engaged in farming and between crops worked for defendant as a carpenter. It is also shown that he did not work regularly during that period. If he wished to lay off a day or two at a time, nothing was said about it. While working for defendant on February 5, 1941, plaintiff was injured in an accident. He and eleven or twelve other employees were engaged in taking some houses down in sections and loading them on trucks to be removed to Leesville, Louisiana. While the other employees were holding up one end of the floor of one of the tourist cabins they were demolishing, plaintiff went under it to knock some cleats from the floor joists to which they were attached. When he did so, the side of the floor which was on the ground kicked out, causing the other laborers to lose control of the floor and it fell on plaintiff. The weight of the floor is estimated at approximately a ton and was approximately twelve feet by sixteen feet. It struck plaintiff on the head and sat him down in a squatting position, with his knees in his face. He received some injury to his knee, jaw and side, all of which he soon recovered from. It is his contention now that he received a severe injury to his back which has caused him total and permanent disability.
On trial of the case, plaintiff attempted to show that the injury to his back was in the second lumbar vertebra. Soon after the accident, plaintiff went to his family doctor at the Tri-State Sanitarium, where he was bandaged up, and then went on to Leesville. The next day he returned to Shreveport and a few days later went to see his doctor again, and on the 25th day of February went to the same doctor, who had x-ray pictures made of plaintiff's back *Page 462 
and after a careful examination, was of the opinion there was no injury to the back caused by the accident of February 5th. In 1933, plaintiff did receive an injury to his back in an accident which fractured the first lumbar vertebra. He drew compensation for this injury for more than one year, then compromised his claim for $1,200. It is his contention that the first injury was entirely well in 1935 and that he has been able to do hard work from that time until he received the injury on February 5, 1941.
The preponderance of the medical testimony is to the effect that the only injury the plaintiff has to his back is the old injury and that the accident of February 5, 1941, did not cause any new back injury. There were no objective symptoms of injury or sprain of the back that would cause pain, other than the injury he received in 1933. This is testified to by all but one doctor and, under cross-examination, it is clear that his final conclusions are based on plaintiff's claim of pain in the region of the second lumbar vertebra. The medical testimony is overwhelmingly against there being any objective symptoms of injury to the back caused by the accident of February 5th, 1941. One of the doctors took plaintiff's claim of pain as true, although there were no objective symptoms he could discover, and thought possibly he might have a sprained back but when enlightened as to plaintiff's activities since the accident and of the first accident in 1933, readily changed his mind.
Plaintiff's entire claim for additional compensation is based upon his continuous claim of pain in his back while at work and in the presence of the doctors who examined him; and unless plaintiff is worthy of belief, his case must necessarily fall for there is nothing to substantiate the claim of pain but his word. His fellow employees testified they assisted him and made his work as light as possible after the accident because he complained of pain in his back. Dr. Durham, in May, 1941, suggested he might need six to eight months to get well solely because plaintiff continuously in his presence complained of pain in his back. Dr. Brown, in March, 1941, thought he would need a few weeks to get well solely because plaintiff complained to him of the pain he was suffering. If we can accept as true plaintiff's complaint of pain, as we ordinarily would do, we might feel justified in finding him disabled for manual labor, but can we, under the facts shown by this record?
On trial of this case, plaintiff testified on direct examination that he quit work the day of the accident, February 5, 1941, and has never done any work since. Later, on direct examination, he testified he tried to work about four months after the date of the accident. On cross-examination, he testified that for sixteen weeks and three days after the accident, he drew compensation for total disability and that he did not earn any wages during that period of time. He admitted that after the compromise, which was May 30, 1941, he did earn regular wages as a carpenter for the same employer, but was positive he was not able to earn any wages before the date of the compromise. Plaintiff claims the only labor he performed after the compromise was light work and that he was not able to do heavy carpenter work.
Plaintiff was presented with a number of drafts covering the compensation payments received by him for the period beginning February 5, 1941, and ending May 30, 1941, and the draft for $322 given him under the compromise judgment. He admitted receiving these drafts and that he knew the payments were based on the fact that he could not earn any wages during that period of time because of his disability, and he positively swore he did not earn any wages during that period of time. Plaintiff was then presented with checks made payable to him by defendant and endorsed and cashed by him for wages earned as a carpenter from the same employer he was working for at the time of the accident. These checks are dated February 8th, February 14th, April 15th, May 3rd, May 15th, May 21st and May 29th, all in 1941, and other checks for almost every week thereafter until November 7, 1941. When he was presented with the cancelled checks, he admitted they were given him for wages earned during that time. Seven of these checks are for wages earned prior to the date of compromise and after the date of the accident. The amounts of the checks show he received the same wages he received before the accident and was performing the same kind of labor.
We cannot excuse plaintiff for accepting compensation for total disability during the time he was performing his regular work and drawing his regular wages on the *Page 463 
ground of ignorance, for by his own testimony he admits he knew why the compensation was being paid to him. In fact, he went weekly to the office of the insurer and collected his compensation. The checks were not sent to his employer but delivered to him. If they had been, the payments would never have been made. It sounds strange, but notwithstanding is a fact, that until this suit was filed, the insurer did not know plaintiff worked during the period of time it paid him compensation and the employer did not know plaintiff had ever collected any compensation or had compromised his compensation claim.
Plaintiff further testified that when the compromise judgment was signed by Judge Pleasant, of the Caddo Parish District Court, he told the Judge he was not satisfied with the settlement. Judge Pleasant was called to testify and stated that he did in this case exactly what he does in all such cases, and that plaintiff told him he was satisfied, otherwise he would never have signed the judgment. We are sure Judge Pleasant's testimony is correct. Plaintiff also testified that Judge Pleasant told him at the time that if he accepted the settlement it would be final, and he could not collect any more compensation, but that he did not believe the Judge. In other words, plaintiff was accepting a final settlement of his claim and at the very time of acceptance, he planned at a later date to try to recover additional compensation.
During the last six or seven weeks of the period during which compensation was paid, when the plaintiff would call at the insurer's office for his compensation, he was asked if he did not think he was able to return to work, and his reply was always that he was not able, yet at these very times he was working regularly every day. During the last three weeks in May, the insurer asked plaintiff to go to Dr. Durham for an examination for the purpose of finding out if he was not able to return to work. He went to Dr. Durham three times during that period to find out if he was able to return to work and never at any time did he tell the doctor that he was working regularly every day at the same job he had when he received the injuries he complained of.
Plaintiff was unfair to his employer, the insurer, the doctor who examined him and to the Court, and his testimony on which he relied to make out a case has been thoroughly impeached until no court would be justified in basing a judgment on it; and without his testimony as to pain, there is not sufficient evidence in the record to justify an award of additional compensation.
For these reasons, the judgment of the lower Court, insofar as it rejects plaintiff's demands, is affirmed with costs.